Filed 1/16/26  P. v. Rincon CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MIGUEL RINCON<br><br>    Defendant and Appellant. | H052416<br>(Monterey County<br>Super. Ct. Nos. SS170304B,<br>SS170575A) |

In May 2018, after defendant Miguel Rincon was restored to competency at a state hospital, he pleaded no contest in two separate cases to second degree robbery (Pen. Code[1], § 211) and second degree commercial burglary (§ 459).  The trial court suspended imposition of sentence and granted Rincon three years of probation with various terms and conditions.  In 2020, after Rincon violated his probation on two separate occasions, the trial court terminated probation after the second violation and sentenced Rincon to three years eight months in state prison.

After Rincon appealed, a different panel of this court reversed and remanded for the trial court to make an eligibility determination for mental health diversion under section 1001.36.  (*People v. Rincon* (Aug. 5, 2022, H048331 [nonpub. opn.].)[2]  Following remand, Rincon filed a motion for mental health diversion under sections 1001.35 and

---

[1] Undesignated statutory references are to the Penal Code.

[2] We previously granted Rincon's request for judicial notice of the record in case No. H048331 on May 14, 2025.

1001.36.  On May 30, 2024, after an evidentiary hearing, the trial court denied Rincon's motion.

On appeal, Rincon contends that the trial court abused its discretion in denying his motion for mental health diversion because substantial evidence did not support the court's conclusion that his mental illnesses were not a significant factor in the commission of the underlying offenses.  The Attorney General concedes that the trial court relied on an erroneous standard of proof, and the matter should be conditionally remanded for the trial court to properly determine Rincon's eligibility for mental health diversion.

We conclude that Rincon is entitled to a conditional limited remand for consideration of his eligibility and suitability for mental health diversion.  We therefore reverse and remand with directions.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   *Factual Background*[3]

#### 1.  *Offenses in Case No. SS170304B*

On February 19, 2017, Officer Francisco Maldonado of the Salinas Police Department was dispatched to investigate a theft at a Safeway store.  The dispatch report also advised that the two suspects involved in the theft had last been seen throwing bottles at a vehicle located near the rear of the store.  On his arrival, Maldonado spoke with victim V.V., who stated that she observed the suspects each holding a case of beer and attempting to walk out of the store without paying.  She followed and yelled at them to stop and put the beer down, at which point one of the suspects, later identified as Fernando Moncada, reached behind his back as though he had a gun, and said "You want to get shot?"  As V.V. attempted to lock the front doors, the second suspect (later

---

[3] We derive the relevant factual background from the police reports for each underlying incident, which Rincon also quotes from in his opening brief.

identified as Rincon) approached her with his sweatshirt up in an attempt to conceal his face and said, "Let's shoot this bitch up." V.V. walked further back into the store, and Rincon followed her until she threw a flower vase in his direction, at which point Rincon walked out of the store. ~(1CT 137)~ V.V. told Maldonado that she was in fear of her life and felt like Rincon and the other suspect were going to shoot her.

Upon reviewing surveillance video footage, Maldonado observed two Hispanic males behaving in the manner described by V.V. Another officer later reported that he had located Rincon and Moncada, who matched the suspects' descriptions, at the rear of the store. Both men were taken into custody, and Maldonado located two cases of beer near where the suspects had been initially located. V.V. positively identified Rincon and Moncada as the two suspects who had robbed the store and threatened to shoot her.

Following his arrest, Rincon agreed to talk to Maldonado after being read his *Miranda* rights. Rincon indicated that he and Moncada had been drinking beer at a nearby park and decided to get some more after they ran out. He indicated they were just being "stupid" and not thinking. When Maldonado asked if Rincon had any intentions of paying for the beer, Rincon indicated that it was "too late" for that now. He also did not appear to recall threatening V.V., including threatening to shoot her, and stated that he "only called her a bitch."

### 2. Offenses in Case No. SS170575A

On April 9, 2017, Officer Ian Parsons of the Salinas Police Department responded to a report of an armed robbery that had just taken place at a 7-Eleven store. After arriving on scene, Parsons spoke to the store clerk, who stated that two Hispanic males with their shirts pulled up over their faces had entered the store and shown him (the clerk) a handgun. The first suspect, who was taller and spoke English, told the clerk to "[g]ive [him] the money," reached into the pocket of his sweatshirt, and exposed just enough of the grip of a handgun for the clerk to see and be threatened by it. The second suspect, who was shorter, was carrying a handgun in his waistband, and similarly raised his

waistband high enough to show the clerk the gun grip. After the clerk opened the first of two cash registers, the first suspect began to take money out, while the second suspect grabbed multiple packages of cigarettes. Once the first register was emptied, the clerk was struck in the back of the head by what felt like a gun. The two suspects then took the money from the second register and left the business.

While Parsons was en route to the 7-Eleven store, he was advised that deputies from the Monterey County Sheriff's Department had conducted a vehicle stop involving the robbery suspects. Rincon was identified as the driver of the vehicle. A search of the vehicle revealed two replica firearms, packages of cigarettes and individually wrapped cigars, and dollar bills in various denominations that matched the clerk's description of the bills taken from the register.

Parsons later spoke to Rincon, who indicated he was drunk and "buzzing" and did not remember much of anything. Rincon stated that he had been drinking alcohol at a party that evening and subsequently dropped his girlfriend off somewhere, then observed emergency lights behind him. However, the second suspect, Antonio Martinez, confirmed that he and Rincon had entered the 7-Eleven store and taken cigarettes without paying.

## B. Procedural History[4]

### 1. Charges and Initial Sentence

On February 21, 2017, the Monterey County District Attorney's Office filed a felony complaint in case No. SS170304B, charging Rincon with second degree robbery (§ 211; count 1); second degree commercial burglary (§ 459; count 2); and criminal threats (§ 422, subd. (a); count 3). On April 11, 2017, a second felony complaint was filed in case No. SS170575A, charging Rincon with second degree robbery (§ 211; count

---

[4] We draw some portions of the procedural background from this court's prior opinion in *People v. Rincon, supra,* H048331.

4

1); the complaint further alleged that Rincon committed the offense while released on bail or his own recognizance in case No. SS170304B (§ 12022.1, subd. (b)). The complaint was later amended to add a charge of second degree commercial burglary (count 2; § 459), which also included an allegation that Rincon committed the offense while released on bail or his own recognizance (§ 12022.1, subd. (b)).

In August 2017, after a doubt was raised as to Rincon's competency, he was found not competent to stand trial and committed to Metropolitan State Hospital in November 2017. Rincon was subsequently restored to competence in April 2018. On May 29, 2018, Rincon agreed to plead no contest to one count of second degree robbery in case No. SS170304B, and one count of second degree commercial robbery in case No. SS170575A, on the condition that he would be granted probation. On June 28, 2018, the trial court suspended imposition of sentence, and in accord with the plea agreement, granted Rincon three years of probation.

### 2. *Violation of Probation Proceedings and First Appeal*

In 2019, the probation department filed two separate petitions alleging that Rincon had violated his probation. After finding both violations to be true, on June 18, 2020, the trial court terminated probation and sentenced Rincon to a total term of three years and eight months in prison on both cases.

Rincon appealed his sentence, arguing that the trial court abused its discretion by terminating his probation and by not considering his suitability for mental health diversion. (*People v. Rincon, supra,* H048331.) While the Attorney General argued the court had not abused its discretion in terminating probation, the Attorney General conceded that Rincon was entitled to a conditional limited remand for the trial court to consider his eligibility for mental health diversion under section 1001.36. (*People v. Rincon, supra,* H048331.) A different panel of this court subsequently conditionally reversed Rincon's sentence and remanded the matter to the trial court for an eligibility determination under section 1001.36. (*People v. Rincon, supra,* H048331.)

5

### 3. Mental Health Diversion Proceedings

#### a. Mental Health Diversion Application and Opposition

Following remand, on February 1, 2023, Rincon filed a request for mental health diversion pursuant to sections 1001.35 and 1001.36. Rincon, who was 18 years old in 2017, argued that he had not received any mental health treatment prior to the offenses and was therefore struggling to manage his mental health disorders at the time. Rincon noted that after he was evaluated in 2017, both evaluating psychologists concluded that he was not competent to stand trial and suffered from "paranoid delusions, had disorganized and paranoid thoughts, had delusional ideations, insisted that he was being followed by Russian spies, and believed that vegans and mechanics were trying to kill him." Rincon further indicated that after he was restored to competency, he gained significant insight into his mental health condition and the need for treatment, and he was therefore an appropriate candidate for mental health diversion. In addition, Rincon asserted that he met the eligibility requirements as follows: (1) he had been diagnosed with qualifying conditions, namely, schizoaffective disorder; (2) because his mental health disorder was present at the time of the offense, the court was required under the current version of section 1001.36, subdivision (b)(2), to find that his mental health order played a significant role in the commission of the charged offense; (3) his mental health symptoms motivating his criminal behavior would respond to treatment; and (4) he did not pose an unreasonable risk of danger to public safety.

In opposition, the People argued that Rincon did not meet the eligibility requirements for mental health diversion because his mental health disorder did not play a significant role in the charged offense. The People noted that Rincon was not diagnosed until after he was charged with the offenses and demonstrated no symptoms at the time of the offense. In addition, because Rincon made statements to police and probation officers reflecting that he had planned and carried out the offenses, the People contended that such facts constituted clear and convincing evidence that his disorder had

6

"nothing to do" with the offenses. The People further argued that based on his conduct towards the victims in the offenses, as well as his continued dangerous behavior as evidenced by his probation violations, Rincon posed an unreasonable risk to public safety if he were to be released for treatment in the community. Finally, the People claimed that Rincon had demonstrated a lack of effort to improve his mental health, based on his history of not complying with the recommendations of medical professionals regarding his mental health treatment and concerns.

### b. Psychological Evaluation Report

Clinical psychologist Dr. Carolyn Murphy conducted a psychological evaluation of Rincon in August 2023. Dr. Murphy had previously conducted an evaluation of Rincon in August 2017, where she concluded that he was not competent to stand trial. In her 2023 evaluation, Dr. Murphy indicated that Rincon was a dual-diagnosis client and suffered from schizoaffective disorder, severe alcohol use disorder, moderate cannabis use disorder, and moderate stimulant use disorder. Dr. Murphy also indicated that following the offenses in 2017, Rincon was reportedly psychotic and remained so in the months afterwards while in treatment, and harbored "delusional ideation" about his criminal conduct. Although several months passed between the time of the offenses and his competency evaluation, Dr. Murphy found it most likely that Rincon was psychotic at the time of the offenses based on: (1) the amount of time it took for Rincon to be restored to competency; (2) the nature of his symptoms; and (3) the likelihood that Rincon's psychosis had emerged approximately a year prior.

### c. Hearing and Ruling

On March 14, 2024, the trial court held an evidentiary hearing on Rincon's mental health diversion motion, where it heard testimony from Dr. Murphy on Rincon's behalf. Dr. Murphy confirmed that based on her interviews with Rincon in 2023, he suffered from schizoaffective disorder, as well as patterns of substance abuse that needed to be addressed concurrently with his mental health treatment. While Dr. Murphy indicated

7

that her review of the 2017 police reports did not reveal any particular signs consistent with Rincon's mental health condition, Rincon's subsequent evaluation and statements reflected that his mental illness was "actively influencing his thinking, perception, and judgement at the time of the crime given what we know of this illness and how it affects a person." Dr. Murphy also noted that at the time of both offenses, Rincon had been consuming alcohol and was intoxicated, which would affect his thinking, behavior, and impulse control. Murphy further testified that individuals with active, untreated schizoaffective disorder – such as Rincon – would have distorted and impaired thinking, reality, testing, and decision making. She therefore concluded that while there was no "specific smoking gun," there were a combination of factors that would serve to significantly impair Rincon's decision making and impulse control at the time of the offenses.

On April 30, 2024, the court heard argument from both parties. Rincon's counsel argued that Rincon's condition had developed over a number of years, and his mental state in 2017 clearly reflected that he was symptomatic, particularly since he was found to be incompetent at the time. Counsel further argued that Rincon's schizophrenia and alcohol use disorder both played a "central and undeniable" role in the commission of the offenses, and Rincon would therefore benefit significantly from diversion and treatment in the community. In opposition, the People argued that there was substantial evidence demonstrating that Rincon's mental health disorder was not a contributing factor to the offenses. With respect to the February 2017 offense, the People claimed that Rincon told the police that he "wasn't thinking," and pointed to Dr. Murphy's testimony that she did not find anything in the report that was consistent with Rincon's schizophrenic disorder. The People also expressed concern with Rincon's willingness to continue in treatment and follow through with his treatment plan, based on prior statements he had made demonstrating an unwillingness to do so.

8

In response, Rincon's counsel argued that under section 1001.36, because he had demonstrated a valid mental health diagnosis that existed at the time of the offense, the burden shifted to the People to disprove or rebut, through clear and convincing evidence, that there was an insufficient nexus between Rincon's condition and his criminal conduct. Counsel contended that the People had not met this burden of proof because they failed to present sufficient evidence demonstrating that Rincon's schizophrenic disorder or alcohol use disorder did not contribute or motivate his conduct. Counsel further argued that per Dr. Murphy's testimony, one of the most common symptoms of Rincon's disorder was impetuous behavior, which would have been exacerbated by his intoxication; therefore, all of these disorders "acted in conjunction to produce this misconduct."

On May 30, 2024, the trial court issued an order denying Rincon's motion for mental health diversion. In making its ruling, the court noted the threshold eligibility and suitability requirements under section 1001.36, and indicated that "[b]ecause the ability to participate in diversion is not a matter of statutory right, but a matter of discretion with the court, the defendant carries the burden of proof and persuasion regarding eligibility and suitability for mental health diversion." While the trial court agreed that Rincon had demonstrated he suffered from schizoaffective disorder, severe alcohol use disorder, moderate cannabis use disorder, and moderate stimulant use disorder, as required under section 1001.36, subdivision (b)(2), he did not satisfy the requirement that his mental health disorder played a significant role in the commission of the charged offenses. Specifically, the trial court noted that Dr. Murphy's report only stated Rincon was psychotic "following the offenses and in the months to follow, not during the commission of the charged offense." Further, the trial court noted that in the police reports for both offenses, Rincon did not mention any of the alleged voices that he later claimed to have been hearing at the time during his competency evaluations. In addition, the court found that Rincon's statements reflected "self-awareness" and "presence of mind" based on numerous factors, including: (1) his decision to cover his face during the commission of

9

the offenses; (2) his attempts to minimize his actions by denying that he threatened V.V. during the February offense, and claiming he was too intoxicated to remember anything during the April offense; and (3) avoiding answering any questions that he had been driving while intoxicated during the April offense in order to not incriminate himself. The trial court therefore concluded that "[t]here is insufficient evidence to find that Mr. Rincon's mental disorder played a significant role in the commission of the charged offenses in his cases."

Rincon timely appealed the court's denial of his motion for mental health diversion.

## II.   DISCUSSION

### A.   *Applicable Law and Standard of Review*

"In 2018, the Legislature enacted sections 1001.35 and 1001.36 to create a pretrial diversion program for defendants with certain mental health disorders. [Citation.] Pretrial diversion 'allows for the suspension of criminal proceedings and potential dismissal of charges upon successful completion of mental health treatment.' [Citation.] The statute expressly promotes '[i]ncreased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety.' [Citations.]" (*Vaughn v. Superior Court* (2024) 105 Cal.App.5th 124, 133.)

"As presently enacted, section 1001.36, subdivision (b) provides that a defendant is eligible for pretrial diversion if two criteria are met. First, the defendant has been diagnosed with a [specified] mental disorder . . . within the last five years by a qualified mental health expert. [Citation.] Second, the 'defendant's mental disorder was a significant factor in the commission of the charged offense.' [Citation.] 'If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or

10

contributing factor to the defendant's involvement in the alleged offense.' [Citation.]" (*People v. Graham* (2024) 102 Cal.App.5th 787, 795 (*Graham*).)

"If a defendant meets these eligibility requirements, the court also must find that the defendant is suitable for pretrial diversion based on satisfaction of the following criteria: '(1) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment. [¶] (2) The defendant consents to diversion and waives the defendant's right to a speedy trial . . . . [¶] (3) The defendant agrees to comply with treatment as a condition of diversion . . . . [¶] [and] (4) The defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community.' [Citation.]" (*Graham, supra,* 102 Cal.App.5th at p. 795.)

"We review a trial court's ruling on a petition for pretrial mental health diversion for abuse of discretion. [Citations.] 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence [citation].' [Citation.]" (*Graham*, *supra*, 102 Cal.App.5th at p. 795.) Therefore, we review a trial court's factual findings in support of its ruling for substantial evidence. (*People v. Whitmill,* 86 Cal.App.5th 1138, 1147.)

### B.    *Analysis*

Rincon argues that the trial court abused its discretion in denying his motion for mental health diversion because substantial evidence does not support a finding by clear and convincing evidence that his schizoaffective disorder was not a "motivating factor, causal factor, or contributing factor to [Rincon's] involvement in the alleged offense." Rincon contends that under the court's analysis, he needed to have been "floridly psychotic" for his condition to be a substantial factor in his offenses, which he was not required to prove in order to demonstrate his eligibility for diversion. Further, Rincon argues that based on Dr. Murphy's report and testimony, as well as the facts of each

11

offense, alcohol abuse featured "prominently" in all of his charged offenses, and his schizophrenic disorder was "at the least" a contributing factor. The Attorney General concedes that the trial court misapplied the presumption under section 1001.36, subdivision (b)(2), based on its statements indicating that Rincon had not met his burden of demonstrating his conditions were contributing factors to the offense, and a conditional remand is required for the trial court to reconsider Rincon's eligibility and suitability for diversion.

The Attorney General's concession is well taken. As both parties note, under the current version of section 1001.36 as amended in 2022, if a defendant establishes that he has been diagnosed with a specified mental disorder within the last five years by a qualified mental health expert, "the court *shall* find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2), italics added.) Accordingly, "[i]n practical terms, following the 2022 amendments, defendants with a proper mental health diagnosis will seldom be ineligible for diversion. The more difficult question will be determining whether they are suitable." (*People v. Harlow* (2025) 113 Cal.App.5th 485, 490 (*Harlow*).)

In the instant matter, the trial court indicated in its ruling that Rincon had been diagnosed with four mental health disorders within the past five years, thus satisfying the first eligibility requirement. Therefore, once this qualifying diagnosis was made, the presumption should have arisen that Rincon's mental condition contributed to his criminal behavior, which the People were then required to rebut by producing clear and convincing evidence that there was no causal connection. However, the record reflects the trial court did not apply this presumption. In particular, the trial court stated on more than one occasion that there was insufficient evidence presented by Rincon to demonstrate a nexus between his mental health disorders and the underlying offenses. As

12

the Attorney General acknowledges, such statements reflect that the trial court mistakenly placed the burden on Rincon to establish this causal connection, when it was the People who had the burden of demonstrating by clear and convincing evidence that there was no such connection. (See *Harlow, supra,* 113 Cal.App.5th at p. 491 ["[o]nce the defendant produces a timely mental health diagnosis, the statute requires that the court presume the crime with which the defendant is charged was causally related to his mental condition. The burden then shifts to the prosecution to show by clear and convincing evidence that the defendant's diagnosed mental disorder was not a contributing factor"].) Further, the trial court's statements reflected that it placed substantial emphasis on the fact that Rincon's diagnosis and manifestation of his psychosis only took place in the months following his offense; however, the statute provides no requirement that the diagnosis be made prior to the offense. (See *Harlow, supra,* at p. 491 ["[t]he statute nowhere says that the diagnosis must *precede* the crime of which the defendant is accused. Indeed, it strongly implies the contrary"].) Accordingly, we find that the trial court misapplied the standard of proof requirements under the mental health diversion statute.

In his reply brief, Rincon requests that in accordance with *Harlow, supra,* 113 Cal.App.5th 485, the matter should be conditionally reversed and remanded with directions for the trial court to find Rincon eligible for diversion and only assess his suitability pursuant to section 1001.36, subdivision (c). However, while eligibility and suitability are preconditions, mental health diversion remains discretionary even if they are met. (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882; *People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 888.) Because of the existence of this residual discretion, we believe the proper remedy is to remand with instructions for the trial court to consider both eligibility and suitability, along with making relevant findings, in accordance with the current law. Therefore, we will vacate the trial court's order denying diversion and direct the court to hold further proceedings to determine both Rincon's eligibility and suitability. (See § 1001.36, subds. (b) & (c).)

13

### III.   DISPOSITION

The judgment is conditionally reversed.  The matter is remanded to the trial court with directions to reconsider Rincon's eligibility and suitability for diversion pursuant to section 1001.36 and in accordance with this opinion.  If the trial court determines Rincon is eligible and suitable, it may grant mental health diversion.  If the court determines he is not, or if he does not successfully complete mental health diversion once granted, it shall reinstate Rincon's convictions and resentence him.

_____
                        Wilson, J.

WE CONCUR:


_____
           Grover, Acting P. J.


_____
           Lie, J.


People v. Rincon
H052416